UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MR. EUN SONG<br><br>                                Plaintiff,<br><br>– v -<br><br>JAMES KWANG LEE, BETTERONE COSMETIC CORP.<br>                             Defendant, | **Case No. _____**<br><br>**VERIFIED COMPLAINT &<br>JURY DEMAND** |

Plaintiff MR. EUN SONG ("Song" or "Plaintiff"), by and through its attorneys, The Law Offices of Vincent Miletti, Esq., states as follows by way of Verified Complaint against defendant JAMES KWANG LEE ("Lee") and BETTERONE COSMETIC CORP. ("BCC") (collectively, the "Defendants"), upon knowledge with respect to Schuman's own acts and upon information and belief with respect to all other matters:

## INTRODUCTION

1.     This is an action for specific performance and damages that arose out of an Agreement entered into between Plaintiff, MR. EUN SONG, and Defendants JAMES KWANG LEE, BETTERONE COSMETIC CORP.  Plaintiff seeks to recover the outstanding amount owed to him which includes the final balance of the purchase price of his former business and inventory, as well as reimbursement of costs associated with additional goods sold and supplied by the Plaintiff, delivery of said goods and utilities used by the Defendant pursuant to the business.

2.     In hindsight, Plaintiff contends that he was played for a fool by the Defendant. As the saying goes, "*the path to hell is paved in good intentions*." No where is this more apparent then in this matter, as the Plaintiff, being cognizant of the Defendant struggling in the business, likely because he spreads himself too thin,  attempted to work with the Defendant—to offer to help him

find a replacement employee to operate this business, offered to modify the agreement to encourage easier, more manageable payments, and other offers to assist, however all have fallen on deaf ears.

3.     With each passing exchange, the Defendants continued to portray the impression that they were committed to performance under the Agreement, that they just needed additional time, that the Defendants were certainly going to repay every penny owed, but the reality was the Defendants, exclusively operated through Mr. Lee, was simply holding the Plaintiff off until Mr. Lee was able to effectively close his business, secure a new tenant in the location, and look to stick the Plaintiff for the final balance due.

4.     What made this even more egregious was the degree of trust the Plaintiff had in the Defendant, and Mr. Lee's attorney Mr. Daniel Kim, Esq., all of which wound up hurting Plaintiff in the end.  Plaintiff was already uncomfortable with going into business with the Defendant, due to the Defendants history of aggressiveness and shark like demeanor, but his anxiety was calmed by the reassuring inducement of Mr. Kim who convinced Plaintiff this was a great idea and his investment into Mr. Lee would be safe.

5.     Alas, hindsight is always 20/20, and what has revealed itself was an opportunistic Defendant, savvy business man and real estate mogul, who was able to smell out and take advantage of a Plaintiff who was lead and induced into believing this would be a great opportunity.

6.     As alleged in greater detail below, pursuant to the Agreement between the parties, the Defendant is contractually obligated to make payment in the amount of no less than $100,000, which includes the actual costs, interest, attorney's fees, and costs. To date, the Defendants have failed to make payment of the balance due, and have brazenly invited litigation.  Thus, here we are today to seek remedial action from the Court.

## PARTIES

7.     Plaintiff, MR. EUN SONG, is an individual with a principal place of residence, located in Los Angeles, California, 90036.

8.     Defendant, JAMES KWANG LEE, is an individual with a principal place of residence of 19 Gilbert Road, Great Neck, New York, 11021.

9.     Defendant, BETTERONE COSMETIC CORP., is a New Jersey registered corporation (DOS ID 0450740007), originally in operation on or about December 13, 2021, with a principal place of business of 232-234 Broad Avenue, #304, Palisades Park, New Jersey 07650. Annexed hereto is a copy of the Certificate of Incorporation filed with the New Jersey Department of the Treasury, Division of Revenue & Enterprise Services.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a), because there is diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, this action involves individual citizens of New York, California and a Corporate Citizen of New Jersey. 28 U.S.C. § 1332(a)(2).

11.     Jurisdiction is further proper because the aforementioned state law claims are all part of the same case or controversy. See 28 U.S.C. § 1367.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted by the Plaintiff in this Complaint took place within the District of New Jersey.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the transactions and goods involved took place in Palisades Park, New Jersey.  Additionally, Defense Counsel on

February 27, 2023 via email confirmed that all witnesses, goods, and premises arose in Palisades

Park, New Jersey. As such, this action is properly venue within the District of New Jersey.

**FACTS COMMON TO ALL COUNTS**

14.     Plaintiff originally was a tenant of the Defendant, running his business from the

Defendants location. Plaintiff formerly operated NY Cosmetics, LLC. Plaintiff desired to leave the

business once his original lease ended and did have a substantial amount of inventory.  Defendant

was interested in continuing the business moving forward and agreed to take on the remaining

inventory at the end of the Lease term.

15.     Prior to entering into any commitment, to ensure that the Defendant would be in

the best position possible, the Plaintiff took the following steps as a pre-condition to advancing the

agreement:

  a.  In November 2021, Plaintiff has his employee train Ms. Hye Seung Lee, the sold

    employee for the Defendant, for 15 days, going through the entire inventory,

    inspecting each one of the products and either rejecting or approving the

    inventory.

  b.  Plaintiff agreed to disregard about 7 boxes worth of product, due to being old or

    damaged.

  c.  Plaintiff provided a $1,000 credit in case there were more damaged or

    nonmerchantable goods in the future.

  d.  Plaintiff provided the Defendant a $6,000 discount off the final inventory value

    (calculated into the overall $130,000 proffered amount).

16.     On or about December 3, 2021, Plaintiff entered into in an agreement with Mr. Lee,

in which Mr. Lee will acquire all of the then existing inventory from the Plaintiff on December 1,

2021, and purchase said inventory for a total cost of $130,000.  Mr. Lee was to be responsible for the possession, marketing and selling of the goods.   A copy of the Agreement is annexed hereto as **Exhibit B** in its original form, with a certified translation annexed hereto as **Exhibit C**.

17.     Pursuant to the terms of the Agreement, Mr. Lee would be responsible for 50% of the payment up front, $65,000, and the remaining balance would be paid before November 30, 2022.

18.     Pursuant to the terms of the Agreement, Mr. Lee would source additional inventory as needed from Plaintiff, and pay a 5% fee on top of the amount due.  Shipping costs were to be covered by the Defendant at costs.

19.     Additionally, at the time the Plaintiff vacated the building, he had invested approximately $100,000 into the buildout, including but not limited to a $6,000 chandelier that the Defendant enjoyed upon taking over the store.  This was an added benefit that greatly increased the value of the property, as well as ensured the Defendant, who was taking over the space, was properly equipped and fitted for a cosmetics supply store.

20.     At the time of the Agreement, Plaintiff was not represented by Counsel. Defendants were represented by his current attorney Daniel D. Kim, Esq., who summons both Plaintiff and Defendant to his office.

21.     Defendant was hoping that by having the signing take place in Mr. Kim's Office, it would enable the Defendant to use enhanced leverage over the Plaintiff.

22.     When the discussions began, Mr. Kim instructed both Plaintiff and Defendant to simply "write what we want on a piece of paper and sign it."  Plaintiff was weary of such an informal Agreement; however, Plaintiff was assured by Mr. Kim that his fears were unnecessary

since Mr. Lee would never cause problems, and then advised that since he is a "building owner," Mr. Lee "had no ability to get out of the agreement[1]."

23.     In particular, Mr. Kim made the following statements to induce Plaintiff to enter into the contract with Mr. Lee:

        a.   This was a simple case, and as such, only required a simple writing.  There was no need for a large contract.

        b.   Since Mr. Lee was the Landlord where the store sits on, there is no way that Mr. Lee could simply avoid the agreement.

        c.   While Mr. Lee is aggressive, and talks wild, he is a good man, charitable, helps his tenants and a good hearted. He keeps his promises and will pay every dollar.

24.     Having successfully induced Plaintiff into taking on the agreement, the parties entered into the contract on December 3, 2021. This Agreement is memorialized in **Exhibit B**.

        a.   **<u>Post-Agreement Period – Invoice Ledgers</u>**

25.     In accordance with the Agreement, the first 50% was due on December 10, 2021. This amount, $65,000, was paid by the Defendants in accordance with the agreement on December 10, 2021. Also at this time, the Defendant did repay the Plaintiff the remaining balance on his security deposit while the Plaintiff was a tenant of the Defendant.

26.     During this time, the Plaintiff continued to supply goods to the Defendants. In an invoice dated November 1, 2021, Defendants purchased $13,413.25 in goods.  This amount was paid pursuant to the invoice on December 10, 2021. See **Exhibit D**.

---

[1] Note for the record that Mr. Kim, Esq, will be called as a witness based on his participation and statements, and it is recommended to the Defendant that he is probably best to retain separate counsel to avoid potential conflict issues.

27.     On or about December 21, 2021, Defendants purchased additional goods from the Plaintiff in the amount of $5,718.50. See **Exhibit E**. To date, this amount remains unpaid.

28.     On or about January 4, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $2,657.89. See **Exhibit F**. To date, this amount remains unpaid.

29.     On or about January 31, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $30,173.48. See **Exhibit G**. This was paid by the Defendant on or about February 2, 2022.

30.     On or about February 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $14,883.38. See **Exhibit H**. This was paid by the Defendant on or about March 10, 2022.

31.     On or about March 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $12,244.49. See **Exhibit I**. This was paid by the Defendant on or about April 7, 2022.  See Exhibit E.

32.     On or about April 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $12,034.55. See **Exhibit J.** This was paid by the Defendant on or about May 6, 2022.

33.     On or about May 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $16,767.79.  See **Exhibit K**. This was paid by the Defendant on or about June 14, 2022.

34.     On or about June 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $9,533.80.  See **Exhibit L**. This was paid by the Defendant on or about July 13, 2022.

35.     On or about July 1, 2022, Defendants purchased additional goods from the Plaintiff in the amount of $3,582.44.  See **Exhibit M**. As of the date of filing this Complaint, this remains unpaid.

### b.   <u>**FedEx & Shipping Invoices**</u>

36.     On or about December 28, 2021, the Plaintiff incurred a cost of shipping that was to be borne by the Defendants.   The shipping was performed by FedEx, tracking number 287983325618, and the total amount due is $24.75. As of the date of filing this Complaint, this remains unpaid.

37.     On or about January 10, 2022, the Plaintiff incurred a cost of shipping that was to be borne by the Defendants.   The shipping was performed by FedEx, tracking number 288379805319, and the total amount due is $54.98. As of the date of filing this Complaint, this remains unpaid.

38.     On or about June 21, 2022, the Plaintiff incurred a cost of shipping that was to be borne by the Defendants.  The shipping was performed by FedEx, tracking number 274621766770, and the total amount due is $26.03. As of the date of filing this Complaint, this remains unpaid.

39.     On or about June 23, 2022, the Plaintiff incurred a cost of shipping that was to be borne by the Defendants.  The shipping was performed by FedEx, tracking number 274718354145, and the total amount due is $69.50. As of the date of filing this Complaint, this remains unpaid.

40.      The total invoices due from FedEx are annexed hereto as **Exhibit N** and remain unpaid to date in the total amount of $175.26.

### c.   <u>**Utility Bills, Account Ledger**</u>

41.     On or about December 20, 2021, Public Service Enterprise Group ("PSEG") submitted an invoice for utilities in the amount of $136.21.  This invoice was satisfied by the Defendants and paid.

42.     On or about January 10, 2022, Spectrum submitted an invoice for utilities in the amount of $132.97.  This invoice was satisfied by the Defendants and paid.

43.     On or about February 18, 2022, PSEG submitted an invoice for utilities in the amount of $195.77.  This invoice was satisfied by the Defendants and paid.

44.     On or about March 22, 2022, PSEG submitted an invoice for utilities in the amount of $136.43.  This invoice was satisfied by the Defendants and paid.

45.     On or about April 21, 2022, PSEG submitted an invoice for utilities in the amount of $145.71.  This invoice was satisfied by the Defendants and paid.

46.     On or about May 20, 2022, PSEG submitted an invoice for utilities in the amount of $193.33.  This invoice was satisfied by the Defendants and paid.

47.     On or about June 21, 2022, PSEG submitted an invoice for utilities in the amount of $114.96.  To date this invoice was not paid. Annexed hereto as **Exhibit O**, is a copy of the relevant invoice.

48.     On or about July 21, 2022, PSEG submitted an invoice for utilities in the amount of $61.01.  To date this invoice was not paid. Annexed hereto as **Exhibit O**, is a copy of the relevant invoice.

49.     On or about August 19, 2022, PSEG submitted an invoice for utilities in the amount of $191.31.  To date this invoice was not paid. Annexed hereto as **Exhibit O**, is a copy of the relevant invoice.

50.     On or about October 3, 2022, PSEG submitted an invoice for utilities in the amount of $227.38.   To date this invoice was not paid.  Annexed hereto as **Exhibit O**, is a copy of the relevant invoice.

51.     As of the time of this Complaint, to date, the Defendant owes $594.66 for the PSEG invoices from June 2022 through October 3, 2022. See **Exhibit O.**

d.  **Early Performance During The Term**

52.     On or about June 9, 2022, the Plaintiff and Defendant shared a text exchange which was prompted by an earlier phone call, in which the Defendant advised he would make the final 50% payment sooner than November 2022.  When asked via text if the payment before November 2022 was going to occur, the Defendant responded, "*let's make it happen, don't worry*."  On or about July 2022, Defendant reached out to the Plaintiff and advised that he needed to close the store because his only employee, Ms. Hye Seung Lee, became pregnant.  She required time away from work and Defendant decided closing the store made more sense than replacing her at the time with a temporary employee.

53.     Defendant reached out to the Plaintiff and asked if Plaintiff could take back off of the existing inventory and refund him accordingly.  The Plaintiff refused.  The Defendant advised he would rent the location to a sneaker store upon closure however, he would simply move this business to an alternative forum.

54.     Plaintiff then connected with Ms. Hye Seung Lee to see if there was another alternative than simply closure.  Ms. Seung Lee advised that she was happy to help find a replacement to run the store in her absence, however she advised Plaintiff that the Defendant desired to close the store and rent it to the new tenant.  So, while Ms. Seung Lee was providing a

viable option, the Defendant's true motives were simply to close the store and rent to the sneaker store.

55.     Me. Seung Lee advised she would try to help sell the inventory online. To date, we are unsure what the current status of the inventory is.

56.     Thereafter, on or about August 17, 2022, Plaintiff sent an email to the Defendant inquiring about (a) the invoice for July 1, 2022 and when it will be paid, (b) how the process is going with the closing of the store, and (c) inquiring about the remaining performance on the Agreement.

57.     Since the closure of the store in July 2022, the utility invoices from June 2022 through October 2022, the FedEx shipping invoices, and the Invoices associated with December 21, 2021, January 4, 2022 and July 1, 2022 went unpaid and remain to be owed today.

      e.   **Balance Comes Due & Efforts to Collect.**

58.     In accordance with the Agreement, on November 30, 2022 the balance of the additional $65,000 was due.

59.     As of November 30, 2022, Mr. Lee did not make the payment as required under the Agreement.

60.     As of November 30, 2022, the Plaintiff was owed a total of **$ 77,728.72**, which was comprised of the following:

| Category | Specifics | Date Owed | Amount Due |
|---|---|---|---|
| Agreement | 50% Balance | 12/3/2021 | 65,000 |
| Invoices | VENDOR | 12/21/2021 | 5,718.50 |
| Shipping | FEDEX | 12/28/2021 | 24.75 |
| Invoices | VENDOR | 1/4/2022 | 2,657.89 |
| Shipping | FEDEX | 1/10/2022 | 54.98 |
| Utilities | PSEG | 6/21/2022 | 114.96 |
| Shipping | FEDEX | 6/21/2022 | 26.03 |
| Shipping | FEDEX | 6/23/2022 | 69.50 |
| Invoices | VENDOR | 7/1/2022 | 1033.28 |

| Invoices | VENDOR | 7/1/2022 | 2118.82 |
| Invoices | VENDOR | 7/1/2022 | 430.31 |
| Utilities | PSEG | 7/21/2022 | 61.01 |
| Utilities | PSEG | 8/19/2022 | 191.31 |
| Utilities | PSEG | 10/3/2022 | 227.38 |
| | | | **77,728.72** |

61.     In light of the amount due, Plaintiff visited Defendant in person on November 29, 2022 and November 30, 2022. On both occasions, the Defendant refused to meet the Plaintiff in person.  Rather, Defendant spoke with Plaintiff on the phone on November 30, 2022, and reassured him he will make a payment.  In fact, the Defendant advised that he hired an online seller to sell off the remaining inventory in the Defendants possession.

62.     During these phone conversations, the Defendants made certain misrepresentations of fact, and omitted certain material facts, including but not limited to: (i) the Defendants readiness, willingness, and ability to continue to keep his promises on the Agreement, (ii) the continuing commitments on operating the store moving forward, (iv) the agreement that the Defendants would continue to sell all of the goods and use those proceeds to make the Plaintiff whole, (v) the concealment of Mr. Lee's intention to breach the Agreement, (vi) the concealment of Mr. Lee filing his dissolution immediately after the November 2022 conversation, and (vii) the correction or cure of existing defaults and breaches on the Agreement.

63.     Immediately after the conversations between the Plaintiff and Defendant, to the utmost surprise of the Plaintiff, the Defendant proceeded to file a Certificate of Pending Dissolution dated November 29, 2022. See **Exhibit R.**

64.     The available evidence supports the Plaintiff's suspicion that he Certificate of Pending Dissolution was just part of a broader scheme to deprive the Plaintiff of the funds he was rightfully owed, to try to say that only relief is toward the business and that now that the business is closed, the well for damages has now dried up.

65.     In light of the Pending Dissolution, the Plaintiff began to take steps to protect their interest.

66.     On January 1, 2023, Plaintiff sent a letter to the Defendants, demanding payment ("January Demand"). This demand was sent via certified mail, and was delivered to the Defendants on January 9, 2023 and January 10, 2023 respectively.  See **Exhibit P**.

67.     While Defendants were in receipt of the January Demand they ignored the correspondence, prompting Plaintiff to now sent a second demand letter, dated February 20, 2023 ("February Demand") via certified mail, increasing the demand and providing a final 10 days to respond. See **Exhibit Q**.

68.     On or about February 27, 2023, Counsel for the Defendant responded to Plaintiff Counsel via email advising that they hereby reject the claim and would rather desire to file a counterclaim for damages.

69.     It is Plaintiffs contention that Mr. Lee is not only seeking to avoid to pay out what he is obligated to pay by way of Agreement, but this was Mr. Lee's intention from day one.

70.     From the onset of this matter, at the preliminary negotiations, Mr. Lee and Mr. Kim, as Mr. Lee's attorney, engaged in a campaign of fraud and deceit—fraudulently inducing the Plaintiff to execute a contract that he believed was too informal to use as an official document, convincing Plaintiff that the Agreement was sufficient and accurately reflected the interest and desires of the parties.

71.     From the onset of this matter, Mr. Kim, repeated made representations to the Plaintiff that this Agreement was binding, that the amounts due to the Plaintiff were unavoidable, and there were additional protections as Mr. Lee was a building owner. The representations were

made to the Plaintiff as a way to induce him to execute an Agreement that he did not believe was proper to begin with.

72.     When Mr. Kim was finally able to convince Plaintiff to look beyond the informalities, Plaintiff was induced into having reliance on the statements made by Mr. Kim at the signing, and relied on those statements for purposes of the relationship going forward.

73.     Such reliance was reasonable since there was an element of trust between the parties.   In addition, Plaintiff was not represented by Counsel so Plaintiff did not have that protection.

74.     As a result of such reliance and inducement, the Plaintiff was damaged in an amount of no less than $100,000 at this time.

75.     Mr. Lee is the sole owner and operator of BCC.  This places him in a unique position, where he could strategically make moves to shift debt to the Corporate Entity, then simply look to dissolve and close accounts.

76.     Mr. Lee has failed to operate BCC independently of himself, or abide by corporate formalities, such that the Corporate Defendants merely served as the "alter ego" of Mr. Lee, when conducting the business of the BCC including singing and executing contracts, the marketing, sale, development, design, construction and oversight of the Corporate Entity.

77.     Mr. Lee exerts, or exerted, pervasive control over BCC, and disregarded the separate nature of the BCC enterprises from that of himself, and operates in both capacities simultaneously.

78.     Mr. Lee, knowing he was to walk away from the amounts due, purposefully undercapitalized the BCC accounts, and took other actions, to shield himself from liability arising from his relationship with the Plaintiff.

79.     As such, Mr. Lee, through BCC, used, and continued to use the corporate enterprise, BCC, to defeat the ends of justice and prevent the Plaintiff from recovering for the damages he sustained as a result of the Defendants fraudulent conduct.

80.     Based on information and belief, all day-to-day operational services of BCC were provided and deployed by Mr. Lee, on a personal, first hand basis, and as a result of the lack of formalities, of which BCC could not have operated if such formalities existed.

81.     Similarly, all financing activities were provided solely by Mr. Lee, which included making decisions as to pay any invoices or not.

82.     Indeed, the entire corporate scheme and set up was devised to (a) absorb as much debt as possible, to seek to convert it to company debt, (b) to set up the absorbed debt as an unsecured investment, and (c) to abscond with proceeds from these transactions in the name of the business, all the meanwhile no intent to complete payment as required to the Plaintiff.

83.     The Plaintiff is frustrated because he believes that the Defendant took advantage of the relationship between the parties and now, is looking to escape any and all liability that is rightfully attributable to the Defendant based on the Agreement.

84.     The Plaintiff cannot possibly absorb the loss of at least $100,000 when such amounts are rightfully owed to him.  This becomes even more egregious because of the personal connection between the parties—Defendant knew that Plaintiff would permit less formal requirements just based on the trust relationship.  Coupled with Mr. Kim making representations as an attorney simply for purposes of inducing the Plaintiff to execute the Agreement, this was a very unfair and deceptive deal to begin with.

85.     Despite demand, the Defendants have refused to make the Plaintiff whole and have even failed to reimburse payments, fees and costs that were front paid by the Plaintiff toward the relationship.

86.     In these and other ways, the Defendants have not only breached their Agreement, but done so fraudulently, and breach their duties as owed to the Defendant as well.

87.     As a direct and proximate result, Plaintiff has incurred, and continues to incur, substantial damages, fees, costs and harm.

## FIRST CAUSE OF ACTION

## SPECIFIC PERFORMANCE

88.     Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

89.     The Agreement is a valid and binding agreement between the parties, which entitles the Plaintiff to (a) payment in the amount of $130,000, (b) a 5% fee on top of any order placed on behalf of Defendant by the Plaintiff, and (c) the transfer and sale of all remaining inventory, as well as assigning the utility accounts, and reimbursement for shipping of the goods.

90.     The Plaintiff has performed all of its obligations under the Agreement, including ordering, preparing, supplying and delivering all goods as desired by the Defendants, maintaining the quality and merchantability of the goods, we all managing all logistics such as deliveries and shipping.

91.     All conditions to Plaintiff's rights to payment have been satisfied.

92.     Plaintiff remains ready, willing and able to continue to source and supply the Defendant should the Defendant want to continue the business pursuant to the Agreement, however in the interim, Plaintiff is entitled to the owed monies, in an amount no less than $100,000.

93.     Defendant is obligated to make the Plaintiff whole by performing his end of the bargain, and make the payments as he had promised to under the Agreement.

94.     Defendant refuses to make payment to the Plaintiff in the amount owed, in accordance with the terms of the Agreement.

95.     By reason of the foregoing, Plaintiff seeks a judgment directing specific performance by Defendant of its obligation to pay all amounts due to the Plaintiff, in an amount no less than $100,000.

96.     Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

97.     Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

98.     The parties entered into the Agreement, which is a valid and enforceable Agreement, evidencing manifest intent, consideration, and certainty between the parties.

99.     Plaintiff has performed all of its obligations under the Agreement, including ordering, preparing, supplying and delivering all goods as desired by the Defendants, maintaining the quality and merchantability of the goods, we all managing all logistics such as deliveries and shipping.

100.     Defendant has materially breached the Agreement because it has failed to make payments as owed under the Agreement— to the tune of an amount of no less than $100,000.

101.     As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has suffered damages in an amount in excess of $100,000, inclusive of interest and attorneys' fees.

102.    Defendants Barnabas Woo's and Jimmy J. Kim's failure to make payments as agreed upon has resulted in substantial losses to Plaintiffs.

## THIRD CAUSE OF ACTION

## BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

103.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

104.    The agreement into by Plaintiff and Defendant contained an implied covenant of good faith and fair dealing pursuant to which the Defendant was obligated to deal with the Plaintiff in a fair, reasonable, and equitable manner in order to ensure that the Plaintiff to receive all benefits to which the Plaintiff is entitled under the Agreement.

105.    However, the Defendant failed to deal with Plaintiff in good faith when it purposedly misled the Plaintiff into believing that he had every intention on satisfying his obligations under the Agreement and pay any and all balances due.

106.    The Defendant failed to pay the invoices for various goods, including shipping, and utilities and has failed to communicate openly and honestly with the Plaintiff about the status of the business which led to the Defendant making false promises about payment and the closure of the store.

107.    The Defendant engaged in the foregoing as callously, willfully, and with deliberate disregard for Plaintiff's rights under the agreement, in furtherance of its own business endeavors and for the purpose of harming the Plaintiff, depriving the Plaintiff of the benefit under the Agreement the Plaintiff has with Defendant.

108.    Furthermore, the Defendant's decision to close the store and rent it to a sneaker store, despite the viable option presented by Ms. Seung Lee to find a replacement to run the store

in her absence, suggests that the defendant's true motive was to deprive the Plaintiff of the funds owed to him, and to prevent the Plaintiff from realizing the value of his investment in the business. Simply put, the Defendant believed this would be a good opportunity to simply walk away and relieve himself of any and all remaining obligations.

109.    Finally, the Defendant's filing of a Certificate of Pending Dissolution just after reassuring the Plaintiff that he would make payment, and ignoring the Plaintiff's subsequent demand to pay, suggests a deliberate attempt in order to avoid paying the Plaintiff what he is owed, and to shield himself from legal liabilities for his action.

110.    All of these actions collectively will demonstrate a breach of duty of good faith and fair dealing on the part of Defendant. Defendant's unreasonable and intentional conduct in breaching its obligations under the Agreement was indeed reckless, wanton, deliberate, malicious and callous disregard of Plaintiff's rights and constitutes a breach of the covenant of good faith and fair dealing implied in the agreement.

111.    As a result of the wrongful breach of the implied covenant of good faith and fair dealing by Defendant, Plaintiff has sustained damages.

112.    As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has suffered damages in an amount in excess of $100,000, inclusive of interest and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

113.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

114.    Defendants received substantial benefits under the Agreement in an amount in excess of $100,000 from Plaintiff.

115.    Plaintiff is expected to be compensated for conferring this benefit upon Defendant by the receipt of payments from Defendants with interest.

116.    As a result of the monies received by the Defendants, by way of their unjust enrichment, the Defendant was able to abscond with monies rightfully owed to the Plaintiff, for keeping his end of the bargain, in an amount, in excess of $100,000.

117.    Plaintiff reasonably expected to be compensated for conferring this benefit, yet the Defendants failed to pay and compensate Plaintiff and has unjustly retained the benefit without providing any compensation to the Plaintiff.

118.    Although the Defendants are presumed to have generated substantial business revenues by the sale of the goods secured from the Plaintiff pursuant to their Agreement, the Defendants have managed to fail to compensate Plaintiffs for effectuating their end of the bargain. This was made despite the Plaintiff not only keeping his end of the bargain, pursuant to the Agreement, but also by way of the significant investment in to the actual store, of which such savings contributed significantly to the Defendant's overall operating revenue. Therefore, Defendant failure to pay all amounts due would be unfounded.

119.    Accordingly, Plaintiff suffered a loss in an amount in excess of $100,000 to which the Defendant failed to pay.

120.    Defendant's refusal to pay for the goods that they received, and which were sold to their customers at a profit, resulted in the Plaintiffs being deprived of the full value of their goods. The Defendant has been unjustly enriched as they have received a benefit at the expense of the Plaintiff without any legal justification.

121.    In accordance with this, the Defendants refusal to pay the Plaintiffs for the goods they supplied constitutes an unjust enrichment, as the Defendant was enriched at the expense of the Plaintiff without any corresponding benefit to the Plaintiff.

122.    Allowing Defendants to receive this benefit without compensation would be unjust.

123.    Defendant would be unjustly enriched if the Defendant did not pay for the benefit it received.  The Defendants should be disgorged of any and all ill-gotten gains.

124.    Accordingly, Plaintiff has suffered damages and Defendant's enrichment has caused the Plaintiff to lose the full value of their goods.

## FIFTH CAUSE OF ACTION

## QUANTUM MERUIT

125.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

126.    The Plaintiff conferred a benefit upon the Defendant by providing them goods, shipping, discounts, a build out, logistics and utilities that helped the Defendant to improve their business operations, increase revenues, and achieve success in the cosmetic industry.  The Plaintiff conferred such benefits in good faith.

127.    The Defendant voluntarily accepted and retained the benefits conferred by the rendering Plaintiff, in accordance with the Agreement.

128.    The Plaintiff reasonably expected payment in full for the goods, shipping, discounts, a build out, logistics and utilities, which enabled the Defendants to carry out their business and generate profits.

129.    Furthermore, as the Defendants performed satisfactorily form the commencement of the Agreement in December 2021, through their default in July 2022, the Plaintiff had a

reasonable expectation of payment, and the benefits provided to the Defendant were done under circumstances that put the Defendant on notice that the Plaintiff expected to be paid.

130.    The amount of goods, shipping, discounts, a build out, logistics and utilities provided by the Plaintiff was reasonable and commensurate with the benefit conferred on the Defendants.  The Plaintiff did not provide any excessive or unnecessary goods, shipping, discounts, a build out, logistics and utilities, and the Defendants have not shown that the value of these items exceeded the amount that they are going to pay to the Plaintiff.

131.    Therefore, Defendants are not only in violation of the Agreement, not only were unjustly enriched, but also under the theory of quantum meruit, the Plaintiff deserves the remaining amounts due pursuant to the obligations under the Agreement.

132.    Thus, the Plaintiff has suffered damages thereby in an amount in excess to $100,000.

## SIXTH CAUSE OF ACTION

## CONVERSION

133.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

134.    The Plaintiff provided valuable goods and utilities to the Defendants.

135.    Plaintiff has an ownership interest in an amount in excess of $100,000 of goods and products of the Defendant.

136.    Defendants have not paid the distribution of goods, shipping of the products and utilities to Plaintiff since at least July 13, 2022, which was the last payment made for the June 1, 2022 invoice.

137.    Since December 2021, or earlier, Defendant has taken the goods, shipping of the products and utilities from Plaintiff and wrongfully exercised personal dominion and control over those goods and utilities.

138.    Since December 2021, Defendant, through their company BETTERONE COSMETIC CORPORATION, utilized the goods and utilities belonging to the Plaintiff and sold them to their consumers giving them significant profits. However, from July 13, 2022 onwards, the Defendant failed to reimburse or at least pay the Plaintiff the face value of the goods and utilities.  As a result, Defendant improperly converted the funds generated from the sale of these products, and the savings associated with the shipping and utilities, all of which rightfully belong to the Plaintiff.

139.    As a direct and proximate result thereof, Plaintiff has suffered damages and loss of control of goods and utilities in which the Plaintiff has an interest in amount in excess of $100,000.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

140.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

141.     The representations, promises and assurance as set forth herein were false, were made in the course of business, and were made by the Defendant without exercise of reasonable care and competence in obtaining the goods and utilities.

142.    The Defendant made negligent misrepresentations to the Plaintiff by promising, assuring and representing that they would pay for the goods and utilities purchased from the Plaintiff.

143.    Plaintiff relied on these false representations and invested money into the goods to be delivered, front paid and covered for the delivery of the goods, as well as stayed registered as the responsible party for the utilities, all to the benefit of the Defendant.

144.    The Defendant knew or should have known that these representations were false or misleading, as they failed to make timely payments despite the repeated demands and request from the Plaintiff.

145.    As a result of the Defendant's Negligent Misrepresentation, the Plaintiff suffered damages in the form of unpaid invoices, unpaid shipping costs, interest charges, utilities and other expenses related to the services as promised under the Agreement.

146.    As a result of the Defendants improper conduct, Plaintiff has sustained damages.

### EIGHTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

147.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

148.    Defendants received the benefit of an amount in excess of $100,000 on the value of goods, shipment and utilities from the Plaintiff.

149.    Defendants promised that the business revenues from BETTERONE COSMETIC CORPORATION would be used to pay back the amount owed to the Plaintiff in accordance with their Agreement.  That amount at this time is in excess of $100,000.

150.    Defendants' promise to repay all amounts due was made with the expectation that Plaintiff would rely on it.  Accordingly, the Plaintiff engaged in specific performances based on their reliance on Defendants promises.

151.    Plaintiff's reliance was actual and foreseeable by the Defendant.

152.    Plaintiff suffered, and continues to suffer, from substantial detriment as a result of the promises made by the Defendants, in which the Plaintiff had reliance on.

153.    Plaintiffs did not take immediate action upon the first default in July 2022 as a result of their reliance on the promises of the Defendants.

154.    Although the Defendants generated substantial business revenues, the Defendants have failed to compensate Plaintiff. The substantial revenues generated by the Defendant was a result of (a) the Plaintiff's significant investment in the store, (b) the Plaintiff's ability to procure, package, fulfill and ship goods to the Defendant, and (c) the Defendants failure to repay debts owed, which added to the substantial revenue generated by the Defendant.  Any claim that may be made about being unable to repay the debt owed would be unfounded.

155.    As a result of Defendants conduct and failure to fulfill their promises, Plaintiff have suffered an identifiable loss including monetary damages and incurring additional expenses and suffering financial losses.

## NINTH CAUSE OF ACTION

## FRAUDULENT CONVEYANCE

156.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

157.    Since December 2021, Defendants have been indebted to the Plaintiff.

158.    Well after Plaintiff's claim against Defendant arose, and ultimately consummating or about November 30, 2022, the Defendant improperly diverted no less than $ 100,000 from the Plaintiff on account of the goods, shipping and utilities to their personal bank accounts.

159.    As a result, the Defendant placed at least $100,000 worth of assets beyond the reach of the Plaintiff, of which should have been available to the Plaintiff had the Defendant performed

their promises. The Plaintiff did not receive any reasonably equivalent value in exchange for the large amount of monies owed, that were diverted from the business, diverted from the accounts established to pay Plaintiffs, and into the personal accounts of Defendant.

160.    Due to the agreement between the Plaintiff and Defendant that the goods and utilities given by the Plaintiff would be paid using the profits on or before November 30, 2022, Defendants diverted cash profits to Defendants personal accounts in an effort to hinder, delay and defraud the Plaintiff in the collection an amount in excess of $100,000.

161.    As a result of Defendants' transfers of profits and other assets from the Defendants corporate accounts, to the Defendant's personal accounts, the Plaintiff's ability to collect the debt owed by the Defendant has been frustrated.

162.    Allowing Defendant maintain these funds, which were specifically identified as funds to be used to pay the goods and utilities belonging to the Plaintiff would be unjust.

163.    As a result of the Defendants improper conduct, Plaintiff has sustained damages.

## TENTH CAUSE OF ACTION

## PIERCING THE CORPORATE VEIL / ALTER EGO

164.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

165.    BETTERONE COSMETIC CORPORATION, is a New Jersey Registered Corporation (DOS ID 04507740007) with a principal place of business at 232-234 Broad Avenue, #304 Palisades Park, New Jersey, and is owned and controlled by the Defendant.

166.    Plaintiff is the sole owner and director of BETTERONE COSMETIC CORPORATION, which gives him significant control over the company's operation and decision-

making. As the sole owner, he has the power to make all major business decisions, including those related to finances and investments.

167. The Plaintiff exerted pervasive control over BETTERONE COSMETIC CORPORATION, disregarded its separate nature, and operated in both capacities simultaneously.

168. BETTERONE COSMETIC CORPORATION is merely an alter ego of the Defendant and that Plaintiff used the Corporate Entity to perpetrate fraud or means to commit an illegal act. Further, BETTERONE COSMETIC CORPORATION is used by the Plaintiff as a vehicle for the evasion of an existing obligation.

169. Further, BETTERONE COSMETIC CORPORATION has been used by the Plaintiff to advance his own personal interests, rather than those of the Company. For example, as in this case, BETTERONE COSMETIC CORPORATION obtained goods and utilities from the Plaintiff in an amount excess to $100,000 and promises to pay the Plaintiff on or before November 30, 2022. Such an act is primarily for the benefit of the Defendant, this could be evidence of his control over the Corporation.

170. Indeed, the entire corporate scheme is devised to extract the profits sales of goods and utilities and leave the Plaintiff unpaid, and unable to answer for the money that the Defendant owed to the Plaintiff and later, any judgment entered by a court of competent.

171. The scheme is accomplished by the Defendant using the Corporation as a vehicle to obtain goods and utilities from the Plaintiff, knowing that the Corporation is not financially able to pay the Plaintiff.

172. The Corporation is continued to be used by the Defendant to defeat the ends of justice and prevent the Plaintiff from recovering for the damages it sustained as a result of the Defendant's negligent and fraudulent conduct.

173.    WHEREFORE, the Plaintiff demands judgment against the Defendant to pierce the corporate veil of BETTERONE COSMETIC CORPORATION allowing the Plaintiff to pursue the Corporation, for the damages sustained as a result of the negligent and fraudulent conduct of the Defendant, together with attorneys' fees, interest, costs of suit, and such other and further relief the court deems equitable, just and proper.

## ELEVENTH CAUSE OF ACTION

## FRAUDULENT INDUCEMENT

174.    Plaintiffs repeats and incorporates by reference each and every allegation contained in the foregoing paragraphs as if the same were set forth fully below.

175.    As set forth at length above, Defendants, and non-party Mr. Kim, made material misrepresentations to and/or deliberately omitted and/or suppressed facts from the Plaintiff in order to induce the Plaintiff to enter into the Agreement with the Defendant to his detriment, which they knew such statements of fact to be false.

176.    These intentional misrepresentations / omissions included, but were not limited to, the following: (i) Mr. Kim's inducement of Plaintiff advising that this was an easy and simple case, required simple writings, no complicated formal contract would be required; (ii) that since Mr. Lee was the Landlord where the store sits on, there is no way that Mr. Lee could simply avoid the Agreement; and (iii) while Mr. Lee is aggressive, and talks wild, he is a good man, charitable, helps his tenants and a good hearted. He keeps his promises and will pay every dollar.

177.    Further, as set forth herein, an additional fraudulent inducement was made during the continued discussions with Mr. Lee.  In particular, Mr. Lee personally misrepresented his intentions, omitted material facts, based on the following: (i) the Defendants readiness, willingness, and ability to keep his promises on the Agreement, (ii) the continuing commitments

on operating the store moving forward, (iv) the agreement that the Defendants would continue to sell all of the goods and use those proceeds to make the Plaintiff whole, (v) the concealment of Mr. Lee's intention to breach the Agreement, (vi) the concealment of Mr. Lee filing his dissolution immediately after the November 2022 conversation, and (vii) the correction or cure of existing defaults and breaches on the Agreement.

178.    Defendants wrongfully intended for the Plaintiff to rely upon these untrue statements and omissions when determining what transactions to undertake regarding the Agreement, both at the beginning of the relationship, and during the relationship term, including how to maximize profitability, to ensure that the Plaintiff would receive what is owed under the Agreement, and under what circumstances they would prepare for the future of the store and the debt moving forward. .

179.    Plaintiff did reasonably rely on such statements when making decisions concerning the Agreement, including, but not limited to, the reliance necessary to enter into the Agreement in the first place, the reliance necessary to permit the Defendant to continue while the Defendant foregoes his rights to recover under the Agreement in November, waiting on payment, reliance as a result of the Defendants position of trust with the Plaintiff, and based on partial or incomplete disclosures by Defendants which misled the Plaintiff.

180.    The Plaintiff's reliance was actual and justifiable.

181.    Plaintiff has suffered substantial damage as a result of Defendants' material misrepresentations and omissions, and Plaintiff's reasonable reliance thereon, including but not limited to, being induced to execute the Agreement, to forego his rights under the Agreement to recover and cure defaults, and to expend resources toward goods, shipment and utilities for the Defendant's business, to his detriment.

182.    WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, together with attorneys' fees, interest, costs of suit, and such other and further relief the court deems equitable, just and proper.

## PRAYER

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

    a.  Awarding compensatory damages,

    b.  Awarding exemplary damages,

    c.  Awarding incidental damages,

    d.  Disgorging the Defendants of all profits illicitly gained,

    e.  Awarding pre- and post-judgment interest thereof, in an amount to be determined at trial;

    f.  Granting all applicable remedies provided under the UCC, including but not limited to those provided pursuant to N.J.S.A. § 12A:2-711 – N.J.S.A. § 12A:2-715;

    g.  Granting attorneys' fees, costs of suit, and interest; and

    h.  Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff MR. EUN SONG, by operation of this Verified Complaint, hereby demands a trial by jury as to all matters so triable.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiffs attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payment.

s made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration pages, specimens, or endorsements. This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully Submitted,

Dated:   Brooklyn, New York
        May 7, 2023

**VINCENT MILETTI, ESQ.**
The Law Office of Vincent Miletti, Esq.
10 Halletts Point, # 1742
Astoria, New York 11102
609-353-6287 (Office)
VMiletti@Milettilaw.com (Email)
NJ Bar 078322013
*Attorney for Plaintiff*

To    Daniel D. Kim, Esq.
       Law Offices of Daniel D. Kim
       5 Penn Plaza, 23 Fl.,
       New York, NY 10001
       (212) 849-6990
       danieldkimlaw@gmail.com
       *Attorney for Defendants*

## VERIFICATION

I, MR. EUN SONG, declare as follows:

1.       I am the Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of California.

2.       I have reviewed the contents of this Complaint to be filed in the Federal Court system and verify that the statements contained herein are true to the best of my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

3.       I am aware that if any of the statements contained in the Complaint are willfully false, I am subject to punishment.

MR. EUN SONG

Sworn to before me this _4_ of

_May_ , 2023

NOTARY PUBLIC

PAUL WONCHANG LEE
Commission No. 2306074
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires Oct. 7, 2023

## <u>CERTIFICATE OF SERVICE IN ELECTRONIC FILING SYSTEM</u>

I certify that this document is being filed through the State Courts' Electronic Filing ("CEF") System, which serves as counsel for other parties who are registered participants as identified on the system in the Case Detail tab. An electronic copy of the foregoing was sent to all registered participants via CEF Confirmation Notice. Any counsel for other parties, or for any parties, who are not registered participants are being served by first class mail on the same date of electronic filing.

_____
Vincent Miletti, Esq.